O

# United States District Court
# Central District of California

| | |
|---|---|
| BETHANY FARBER,<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES,<br><br>   Defendant. | Case № 2:22-cv-01173-ODW (KSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [36]** |

## I.   INTRODUCTION

This is a case of mistaken identity arising from the misidentification of Plaintiff Bethany Kaley Farber ("Farber") in an arrest warrant out of Texas. Pursuant to that Texas warrant, officers of the Los Angeles Police Department arrested Farber and detained her for thirteen days. Farber sued the City of Los Angeles ("City"), alleging the City violated her constitutional rights in arresting and detaining her. (Compl., ECF No. 1.) The City moves for summary judgment on all of Farber's claims. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 36.) For the reasons discussed below, the Court **GRANTS** the City's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

As it must on a motion for summary judgment, the Court sets forth the material facts and draws all reasonable inferences in the light most favorable to Farber, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

On Friday, April 16, 2021, Farber arrived at Los Angeles International Airport ("LAX") with plans to fly to Mexico. (Pl.'s Separate Statement of Disputed Facts ("PF") 20–21, ECF No. 47.) An agent with Customs and Border Patrol notified LAX police ("LAXPD") of an outstanding no-bail warrant for Farber out of Texas. (Def.'s Separate Statement of Uncontroverted Facts ("DF") 2–3, ECF No. 38; PF 22; *see also* Decl. Emily S. Cohen ISO Mot. ("Cohen Decl.") Exs. 5 ("Warrant"), 6 ("Texas Indictment"), 7 ("Teletype Warrant"), ECF Nos. 37-5 to 37-7 (redacted), 44-2 to 44-4 (sealed).) The first, middle, and last name; date of birth; address; driver's license number; and physical descriptors in the Warrant all matched Farber. (DF 3.) LAXPD officers detained Farber pursuant to the Warrant. (DF 2.) Farber protested that there must have been a mistake, she had never been to Texas, and the Warrant could not be for her. (PF 26–27.)

LAXPD officers sought booking advice from the Los Angeles Police Department ("LAPD"). (DF 4; PF 28.) LAPD Officer Marlon Moorer confirmed that Farber's descriptors matched the Warrant and that Texas sought extradition. (DF 4.) Farber was then transferred to LAPD Pacific Division where officers booked her and took her livescan fingerprints and photo. (DF 5.) The Warrant did not include fingerprints or a photo for comparison. (DF 6; *see* Warrant.) Farber notified the LAPD officers that there must be a mistake, she had never been to Texas, and the Warrant could not be for her. (PF 45.) Farber was housed at LAPD 77 Jail from Friday, April 16, 2021, until her court hearing the following Tuesday. (PF 47–48.)

On Tuesday, April 20, 2021, Farber appeared with legal counsel for a hearing before the California Superior Court. (DF 8.) Farber disputed that she was the true subject of the Warrant, and the Court set an identification hearing for April 30, 2021.

(DF 8; PF 49.)  On Wednesday, April 21, 2021, in preparation for the identification hearing, LAPD contacted the Gainesville Police Department ("GPD"), which had issued the Warrant, and requested additional information including fingerprints and photographs of the Warrant subject.  (DF 9; PF 50.)  GPD officers replied that they did not have fingerprints for the Warrant subject, but on April 22, they sent LAPD a police report and three photos taken from videos.  (DF 10; Cohen Decl. Exs. 12 ("LAPD-GPD Emails"), 13 at 35–48 ("Police Report"), 13 at 49–51 ("Photos"), ECF Nos. 37-12 to 37-13 (redacted), 44-09 to 44-10 (sealed).)  The Police Report identifies Farber as the subject throughout, using her full name, date of birth, address, driver's license number, and physical descriptors; all this information exactly matched Farber.  (*See* Police Report 36, 41, 43, 45, 46, 47; Cohen Decl. Ex. 4 ("Farber DMV Printout"), ECF No. 37-4 (redacted), 44-1 (sealed).)  One Photo shows a brunette woman; the subject in the other two Photos is not clear. (*See* Photos.)  Farber is blonde. (PF 18.)  The Police Report and Photos were not enough to confirm or rule out Farber as the Warrant subject.  (PF 51; Def.'s Resp. PF 52, ECF No. 61-3.)

On Tuesday, April 27, 2021, at 1:39 p.m., LAPD received a facsimile of a Texas court order that stated, "After further investigation, it has been determined that the individual originally identified is the incorrect Bethany Farber.  Bethany Kaley Farber . . . is not connected to this offense . . . ."  (DF 11; PF 53.)  GPD officers had incorrectly identified Bethany Kaley Farber as the subject of the Warrant; the true subject was a woman named Bethany Gill Farber with a different date of birth and different physical descriptors.  (DF 13; PF 66–67.)  LAPD took the Texas fax to court the next day at 8:30 a.m., and Farber was ordered released.  (DF 12; PF 54–55.)  From April 20 until her release on April 28, 2021, Farber was housed at Lynwood Women's Jail.  (Decl. Bethany K. Farber ISO Opp'n ¶ 12, ECF No. 46-1.)

On February 22, 2022, Farber initiated this action against the City for unlawful arrest and detention. (Compl.; First Am. Compl. ("FAC"), ECF No. 7.)  Farber asserts seven causes of action: (1) Unlawful Seizure (42 U.S.C. § 1983)—Fourth and

Fourteenth Amendment; (2) Entity Liability (*Monell* Claim); (3) Unlawful Arrest (42 U.S.C. § 1983)—Fourth Amendment; (4) False Arrest/False Imprisonment; (5) Violation of the Bane Act; (6) Intentional Infliction of Emotional Distress ("IIED"); and (7) Negligence. (FAC ¶¶ 42–80.)[2]

The City moves for summary judgment, or in the alternative partial summary judgment, on all of Farber's claims. (Mot. 1.) The Motion is fully briefed. (Opp'n, ECF No. 46; Reply, ECF No. 61.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*, 550 U.S. at 378.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

"[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (emphasis omitted)

---

[2] Farber dismissed an eighth cause of action for Cruel and Unusual Punishment in violation of the 8th Amendment. (FAC ¶¶ 81–90; Order re Stip., ECF No. 35.) Farber also asserts a ninth claim, for "Declaratory, Equitable, and Injunctive Relief," but this is a remedy, not a cause of action.

(citing *Matsushita*, 475 U.S. at 586–87). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere "scintilla" of contradictory evidence to survive summary judgment. *Anderson*, 477 U.S. at 255; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV. EVIDENTIARY MATTERS

The City and Farber request judicial notice of submitted materials. (Def.'s Request Judicial Notice, ECF No. 39; Pl.'s Request Judicial Notice, ECF No. 48.) The Court **GRANTS** both requests for judicial notice of court documents in the California and Texas cases filed against Farber, because the Court "may take notice of proceedings [and related filings] in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); Fed. R. Evid. 201(b). However, the Court **DENIES** Farber's request concerning an NPR article published in 2022, because it is not a proper subject for judicial notice. *See* Fed. R. Evid. 201(b).

The City and Farber object to certain items of the other's evidence. (Def.'s Objs. Pl.'s Evid., ECF No. 61-2; Pl.'s Objs Def.'s Evid., ECF No. 49.) Generally, much of the material to which the parties object is unnecessary to the resolution of the Motion so the Court need not resolve those objections. Similarly, most relevance- and foundation-based objections are moot in the context of summary judgment motions. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Moreover, the Court does not consider Farber's proffered improper argument and legal conclusions, (*see* Scheduling Order 6–9, ECF No. 19), so the City's objections on that basis are also moot.

To the extent the City objects on grounds other than those identified above, it fails to comply with the Court's Order regarding presentation of evidentiary objections. (*See id.* at 8 (requiring evidentiary objections to be organized relative to statements of fact that the evidence is meant to support).) This makes the relevance of the challenged evidence, and of the objections, difficult to discern. In light of the City's noncompliance and the Court's authority to consider opposition evidence that could be presented in an admissible form at trial, *see Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003), the City's remaining objections are overruled.

Finally, Farber raises just two objections. The Court does not rely on the first item of evidence to which Farber objects, and overrules the second objection concerning Moorer's declaration statement, "the identifying information for Bethany Farber given to me by the LAXPD Officer was an exact match to the warrant system," as the Court finds the statement neither vague nor ambiguous.

## V. DISCUSSION

The City contends it is entitled to judgment as a matter of law on Farber's federal and state law claims because there is no genuine dispute of material fact that the City did not violate Farber's federal constitutional rights and the City is immune to Farber's state law claims under applicable California law. The Court agrees and concludes that applicable binding precedent forecloses all of Farber's claims.

### A. Federal Causes of Action, 42 U.S.C. § 1983

To prevail under 42 U.S.C. § 1983, a plaintiff must prove: (1) that he or she was "deprived of a right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was committed under color of state law." *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Here, Farber asserts § 1983 causes of action for unlawful seizure and unlawful arrest in violation of the Fourth and Fourteenth Amendments based on her arrest and detention. (FAC ¶¶ 42–49, 54–57.) She also asserts a cause of action for municipal liability pursuant to *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658 (1978). (FAC ¶¶ 50–53.) It is undisputed that the conduct at issue was under color of law. (*See generally* Mot.; Opp'n 11.) Thus, the key issue is whether the City deprived Farber of constitutional rights.

### 1. Unlawful Seizure: Arrest—Fourth Amendment

The City argues that Farber's claims for unlawful seizure and arrest in violation of the Fourth Amendment fail as a matter of law because the undisputed facts establish that the officers had probable cause to arrest her based on a facially valid warrant that identified her specifically. (Mot. 5–6; Reply 1–2.) Farber contends the officers violated her Fourth Amendment rights when they arrested her, first, because the Warrant was infirm as it named the wrong person, and second, because Moorer was not qualified under LAPD policy to give booking advice. (Opp'n 11–12, 18–19.)

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). An arrest is considered a seizure under the Fourth Amendment and is reasonable when supported by probable cause. *Hayes v. Florida*, 470 U.S. 811, 816 (1985). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is measured by an objective standard based on the information known to the arresting officer. *Id.*

Farber argues that the Warrant did not provide probable cause because it identified the wrong person and was therefore infirm. (Opp'n 11–12.) However, Farber did not raise this issue in the pleadings. (Mot. 5 ("There is no allegation in the Complaint that the warrant is irregular."); *see generally* FAC.) Instead, Farber impermissibly raises it for the first time in opposing the City's Motion. (*See* Reply 7.) "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.

2006); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (finding that the complaint "gave the [defendants] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment."). For these reasons, the Court declines to consider Farber's argument that the Warrant is infirm because it identified the wrong Bethany Farber.

Nevertheless, the Court does find the Warrant sufficiently particular on its face to satisfy the Fourth Amendment. A warrant must particularly describe the person or things to be seized. *Gant v. County of Los Angeles*, 772 F.3d 608, 614 (9th Cir. 2014) (citing U.S. Const. Am. IV). A warrant is sufficiently particular when it contains "the subject's name, sex, race, hair color, eye color, and date of birth . . . , in addition to approximate height and weight." *Rivera v. County of Los Angeles*, 745 F.3d 384, 388 (9th Cir. 2014). Here, the Warrant contained Farber's first, middle and last names; date of birth; address; driver's license number; hair color; eye color; and height and weight. It thus satisfied the Fourth Amendment's particularity requirement.

Moreover, binding Ninth Circuit precedent forecloses Farber's Fourth Amendment claims. In *Rivera v. County of Los Angeles*, another case of misidentification, officers mistakenly arrested Rivera instead of the warrant's true subject. *Id.* at 389. The Ninth Circuit explained that, "[i]n such cases, the question is whether the arresting officers had a good faith, reasonable belief that the arrestee was the subject of the warrant." *Id.* The court in *Rivera* found the officers were not unreasonable in believing that Rivera was the true warrant subject at the time of the arrest because the name and date of birth on the warrant matched Rivera exactly, and the height and weight descriptors were within one inch and ten pounds. *Id.* Accordingly, the court affirmed summary judgment for the officers, holding they had not violated Rivera's Fourth Amendment rights by arresting him pursuant to the warrant. *Id.* at 389, 393.

Here, Farber *was* the true subject of the Warrant—GPD issued the Warrant *for her*. The Warrant listed Farber's exact identifying information down to the detail and

did not deviate by one inch or pound. Thus, even more so than in *Rivera*, the arresting officers here were not unreasonable in believing that Farber was the true warrant subject at the time of the arrest. Further, "the Supreme Court has expressly recognized [that] police are right to be wary when suspects claim mistaken identity." *Id.* at 389. Thus, Farber's protests of mistaken identity did not make the officers' belief unreasonable. Pursuant to *Rivera*, the officers did not violate Farber's Fourth Amendment rights in arresting her pursuant to the Warrant.

Farber also argues that the City violated her Fourth Amendment rights by allowing Moorer to provide booking advice, "because he was not an investigative supervisor." (Opp'n 19.) Farber contends that LAPD policy requires an officer to have attended "LAPD Supervisor School" before they are authorized to provide booking advice from the Fugitive Warrant Section. (*Id.*) Even accepting Farber's assertion as true, a department policy does not establish constitutional rights. *See Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001). As such, viewing all facts and reasonable inferences in Farber's favor, there is no claim as a matter of law for a constitutional violation based on Moorer giving booking advice as a non-supervisor in violation of department policy.

In light of applicable and binding Ninth Circuit precedent affirming summary judgment and finding no Fourth Amendment violation in circumstances less clear than those here, no reasonable jury could find the arresting officers here unreasonable in believing that Farber was the true subject of the Warrant. As such, the City is entitled to judgment as a matter of law on Farber's Fourth Amendment claims.[3]

  2.  *Unlawful Seizure: Detention—Fourteenth Amendment*

The City argues Farber cannot establish that the post-arrest detention violated her Fourteenth Amendment due process rights. (Mot. 6–9.) Farber contends the City

---

[3] Farber also argues that Moorer could not have confirmed that the Warrant matched her driver's license because she did not have her driver's license on her person when arrested. (Opp'n 19 (citing PF 24–25).) This fact does not create a triable issue, however, because Moorer did not need Farber's physical driver's license to verify that her descriptors matched. (*See* Farber DMV Printout.)

violated her due process rights because LAPD failed to investigate her identity and denied her access to the courts for an extended period of time. (Opp'n 12–18.)

"[P]ost-arrest incarceration is analyzed under the Fourteenth Amendment alone." *Rivera*, 745 F.3d at 389–90 (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). Ninth Circuit "cases holding that a mistaken incarceration violated the Due Process Clause fit into at least one of two categories." *Garcia v. County of Riverside*, 817 F.3d 635, 640 (9th Cir. 2016). "Either '(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time.'" *Id.* (quoting *Rivera*, 745 F.3d at 391). It is the plaintiff's burden to show that it was or should have been known that the plaintiff was entitled to release. *Rivera*, 745 F.3d at 390.

      a.    <u>Further investigation</u>

Farber argues that due process required the officers to investigate and verify her identity, at least before transferring her to Pacific Division or 77 Jail, because she consistently protested her innocence and misidentification. (Opp'n 13–17.)

"[T]he 'further investigation' cases have involved significant differences between the arrestee and the true warrant subject." *Garcia*, 817 F.3d at 640 (collecting cases). For example, in *Fairley v. Luman*, 281 F.3d 913, 915 (9th Cir. 2002) (per curiam), the plaintiff and the true warrant subject (who were twins) had different first names and differed in weight by 66 pounds. The court held that these obvious differences together with the plaintiff's "repeated protests of innocence" should have indicated to defendants that further investigation was warranted. *Id.* at 918; *see also Gant*, 772 F.3d at 622–23 (finding due process violation where plaintiff and true warrant subject differed by seven inches and 120 pounds).

By contrast, in *Rivera*, the plaintiff and the true warrant subject had the same name, same date of birth, and very similar physical characteristics (within one inch and ten pounds). 745 F.3d at 387, 389. The court found that these circumstances did *not* give defendants reason to believe the plaintiff was not the warrant subject, or that

further investigation into the plaintiff's identity was warranted based on what they did know. *Id.* at 390–91; *see also Baker*, 443 U.S. at 141 (finding no due process violation where the warrant exactly matched the plaintiff's identifying information).

The undisputed facts here align with *Rivera* and *Baker*, and not *Fairley* or *Gant*. The information in the Warrant exactly matched all aspects of Farber's identifying information because GPD mistakenly issued the Warrant *for Farber*. Upon booking, the officers took Farber's fingerprints, but the Warrant included no fingerprints for comparison, so all the information before the officers confirmed that Farber was the Warrant's subject. *Cf. Fairley*, 281 F.3d at 915 (noting that a fingerprint comparison was readily available and "would have immediately alerted the City it had the wrong man").

Moreover, Farber identifies nothing beyond her protests of innocence and mistaken identity that would have given the officers reason to believe further investigation was warranted. But "[c]laims of innocence are common in jails; a jailor need not independently investigate all uncorroborated claims of innocence if the suspect will soon have the opportunity to assert his claims in front of a judge." *Rivera*, 745 F.3d at 391; *see also Baker*, 443 U.S. at 145 ("[I]nnocence of the charge contained in the warrant . . . is largely irrelevant to [a] claim of deprivation of liberty without due process of law."). Similarly, "[u]nsupported claims of mistaken identity, by themselves, do not trigger a duty to investigate further." *Rivera*, 745 F.3d at 392. Here, Farber's uncorroborated protests of innocence and misidentification, in the face of all other information confirming her as the Warrant's subject, did not trigger a duty to investigate further.

          b.    <u>Denied access to courts</u>

Farber also argues that her due process rights were violated when she was denied access to court for an extended period. (Opp'n 17–18.)[4]

---

[4] Denial of access to court is another issue Farber did not raise in the pleadings. (*See generally* FAC; Reply 5.) However, the City raises the issue in its Motion, and thus was not deprived of the

11

"[T]he 'denied access' cases have involved significant periods of deprivation." *Rivera*, 745 F.3d at 391. Due process is "not violated unless [the detained individual] was held for a long enough period of time without adequate procedures." *Id.* at 392 (citing *Baker*, 443 U.S. at 145). In California, an arrested individual must be brought to court within two days, excluding Saturdays and Sundays. Cal. Pen. Code § 825. California courts have found an individual arrested on Friday to be timely arraigned on the following Tuesday. *People v. Stewart*, 264 Cal. App. 2d 809, 814 (1968).

Farber was arrested on Friday, April 16, 2021, and appeared in court with her legal counsel on the following Tuesday, April 20, 2021. (DF 5, 8.) Thus, she was provided access to court within the statutorily prescribed time, and within a reasonable amount of time. The circumstances here are entirely unlike those in "denied access" cases like *Fairley*, where the misidentified plaintiff "was held for twelve days without a hearing or court appearance," *Rivera*, 745 F.3d at 391 (discussing *Fairley*, 281 F.3d at 915, 918), or like *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), where the "plaintiff spent 114 days in jail without an arraignment, a bail hearing, or a trial," *Rivera*, 745 F.3d at 391 (discussing *Oviatt*, 954 F.2d at 1473, 1477).

Moreover, at the initial hearing on April 20, 2021, Farber raised the issue of misidentification, and the court then scheduled an identification hearing for April 30, 2021. In preparing for that identification hearing, GPD discovered its mistake, and Farber was released on April 28, 2021. Farber was provided adequate procedural protections and access to the courts, she took advantage of those protections, and they resulted in her release. As a matter of law, Farber was not denied access to court.

In light of the applicable and binding Ninth Circuit precedent discussed above, no reasonable jury could find the undisputed facts here indicated that further investigation was warranted or that Farber was denied access to the courts for an

---

opportunity to challenge it in moving for summary judgment. (Mot. 8–9.) Accordingly, the Court considers Farber's argument in opposition on this issue to be fairly raised.

extended period of time. Therefore, the City is entitled to judgment as a matter of law on Farber's Fourteenth Amendment claim.

### 3. Entity Liability—Monell Claim

"A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" *Oviatt*, 954 F.2d at 1473–74 (alteration in original; footnote omitted) (quoting *Monell*, 436 U.S. at 691). As a logical corollary, where there is no underlying constitutional violation, there can be no *Monell* liability, regardless of the government entity's policies, customs, or failure to train. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

As no reasonable jury could find an underlying constitutional violation, Farber's claim for municipal liability also fails. Therefore, the City is entitled to judgment as a matter of law on Farber's *Monell* claim.[5]

**B. State Law Claims**

Farber also asserts state law causes of action for false arrest/imprisonment,[6] violation of the Bane Act, IIED, and negligence. (FAC ¶¶ 58–80.) The City moves for summary judgment on Farber's state law claims, arguing that claims fail as a matter of law and the City is statutorily immune. (Mot. 12–19.)

---

[5] Farber also fails to raise a triable issue with respect to entity liability based on custom, policy or failure to train because she does not meet her burden of showing that the mistaken arrest was more than a single, "isolated or sporadic" incident. *See Gant*, 772 F.3d at 618 (citing *Trevino v. Gates*, 99 F.3d 911, 910 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents.")). A single incident is not sufficient to show that a "practice is so widespread as to have the force of law." *Rivera*, 745 F.3d at 389.

[6] "'[F]alse arrest' and 'false imprisonment' are not separate torts." *Collins v. City & Cnty. of San Francisco*, 50 Cal. App. 3d 671, 673–74 (1975).

### 1. Applicable Rules

"False imprisonment is defined by statute as 'the unlawful violation of the personal liberty of another.'" *Lopez v. City of Oxnard*, 207 Cal. App. 3d 1, 7 (1989) (quoting Cal. Pen. Code § 236).

The Bane Act provides a cause of action for violations of constitutional and statutory rights through "threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b); *Rivera*, 745 F.3d at 393.

IIED requires a plaintiff to prove that the defendant engaged in "extreme and outrageous conduct," intentionally causing the plaintiff severe emotional distress. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).

Negligence requires a plaintiff to prove that the defendant owed a duty of care to plaintiff, breached that duty, and the plaintiff was harmed as a result. *Collins v. County of San Diego*, 60 Cal. App. 5th 1035, 1048–49 (2021) ("*Collins 2021*").

### 2. Analysis

Farber's state law claims fail as a matter of law because, as discussed above, the arrest and detention were lawful and there is no factual question whether the officers had a reasonable belief that Farber was the true subject of the Warrant.

The false imprisonment claim fails because the arrest was lawful and "[i]mprisonment based upon a lawful arrest is not false, and is not actionable in tort." *Lopez*, 207 Cal. App. 3d at 10. The Bane Act claim fails because the "coercion [wa]s inherent in the constitutional violation alleged, i.e., an overdetention in County jail, [so] the statutory requirement of 'threats, intimidation, or coercion' is not met." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). The IIED claim fails because the "extreme and outrageous" element is lacking, as the officers had probable cause and were reasonable in believing the plaintiff was the subject of a warrant. *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1301 (E.D. Cal. 2014), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F. App'x 982 (9th Cir. 2016). Finally, the negligence claim fails, first, because the officers had probable cause to make the

arrest, so the "arrest itself is not actionably negligent," *Collins 2021*, 60 Cal. App. 5th at 1049, and second, because the officers owed no duty to further investigate Farber's identity where all the information before the officers confirmed that Farber was the Warrant's subject, *see Lopez*, 207 Cal. App. 3d at 11.

    3.    *Immunities*

Moreover, the City also invokes immunities to Farber's claims, found in California Civil Code section 43.55, Penal Code section 847, and Government Code section 821.6. (Mot. 17–19.) These provisions provide officers immunity for "an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant," Cal. Civ. Code § 43.55(a); immunity from "false arrest or false imprisonment arising out of any arrest" that "was lawful," or for which the officer "had reasonable cause to believe . . . was lawful," Cal. Pen. Code § 847(b)(1); and immunity "in the performance of their prosecutorial duties from the threat of harassment through civil suits," *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1047–48 (2007), *as modified on denial of reh'g* (Feb. 21, 2007) (noting that Government Code section 821.6 immunity extends to actions taken in preparation for judicial proceedings, even if the authorities later decide not to file or to dismiss). To the extent the City's employees may invoke these immunities, the City may as well. Cal. Gov't Code § 815.2(b).

In *Lopez*, the California Court of Appeal affirmed judgment for the defendants on claims like Farber's, based on the first two immunity statutes above, Civil Code section 43.55 and Penal Code section 847. 207 Cal. App. 3d at 5. Lopez was arrested and detained several times on a warrant not meant for him because the warrant matched Lopez's full name, date of birth, address, and physical description. *Id.* at 4. Lopez sued the City for false imprisonment, negligent arrest and failure to investigate, and IIED. *Id.* at 5–6. Upon the defendants' demurrer, the trial court found defendants entitled to statutory immunity; the appellate court agreed, holding that "there [wa]s no

factual question whether the officer had a reasonable belief that Lopez was the person named in the warrant," and jail personnel "are entitled to rely on process and orders apparently valid on their face." *Id.* at 9. The court thus affirmed judgment for defendants on all of Lopez's claims. *Id.* Later, in *Rivera*, the Ninth Circuit approved of and applied *Lopez*, Civil Code section 43.55, and Penal Code section 847 to affirm summary judgment for the defendant on claims for false imprisonment and violation of the Bane Act. *Rivera*, 745 F.3d at 393.

The decisions in *Lopez* and *Rivera* constitute binding precedent and foreclose Farber's state law claims. Like the public entity defendants in *Lopez* and *Rivera*, the City is immune from civil liability stemming from the mistaken arrest and detention. As discussed above, there is no factual question whether the officers had a reasonable belief that Farber was the person named in the Warrant, and the jail personnel were entitled as a matter of law to rely on process and orders apparently valid on their face. *See Rivera*, 745 F.3d at 393; *Lopez*, 207 Cal. App. 3d at 9. Accordingly, the officers may invoke these immunities to avoid the liability alleged, and the City may as well. Cal. Gov't Code § 815.2(b).

Therefore, Farber's state law claims fail, and the City is entitled to judgment as a matter of law.

### C. Farber's Rule 56(d) Request

Farber requests that the Court defer or deny the Motion to allow her more time for additional discovery, pursuant to Federal Rule ("Rule") of Civil Procedure 56(d). (Decl. Mark Lim Rule 56(d) ("Lim Decl."), ECF No. 50.)

"A party requesting a continuance pursuant to Rule 56(d) must identify by affidavit 'the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006)). "The facts sought must be 'essential' to the party's opposition to summary judgment, and it must be 'likely' that those facts will be

discovered during further discovery. *Id.* (citations omitted). "A district court abuses its discretion only if the party requesting a continuance can show that allowing additional discovery would have precluded summary judgment." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1076 (9th Cir. 2019).

Here, Farber relies on hundreds of pages of evidence and deposition testimony in opposing the City's motion for summary judgment. Nevertheless, she contends that she just received a critical new piece of evidence, the LAPD Internal Affairs Investigation Report ("IA Report") into her arrest and detention. (Lim Decl. ¶ 14.) She posits that deposing the LAPD investigators who approved the IA Report will reveal "when the City of Los Angeles learned" the details of the GPD investigation into the underlying Texas crime. (*Id.* ¶ 18.) She speculates that "the source material [underlying the IA Report] should controvert" the City's "position that '[t]here was no indication that the person named in the warrant could be any person other than Plaintiff.'" (*Id.* ¶ 19.)

However, the source material for the IA Report was disclosed in discovery well in advance of the cutoff date and the City's Motion. (*See* Decl. Emily Cohen ISO Reply ("Cohen Decl. Reply") ¶¶ 9–10, ECF No. 61-1.) Thus, Farber possessed the material she purports now to seek. And although she had this material, Farber fails to raise a triable issue about whether the City was required to further investigate Farber's identity. She identifies no new or additional information that she was unable to discover previously. Farber's speculation that additional discovery will turn up the evidence she needs is insufficient to satisfy Rule 56(d). *See Stein*, 906 F.3d at 833.

Moreover, Farber knew that the IA Report would not be available until December 2022, which would be after the fact discovery cutoff and after the deadline to file motions for summary judgment. (*See* Lim Decl. ¶¶ 12–13; Cohen Decl. Reply ¶ 16.) Despite stipulating to extend expert discovery based in part on the IA Report's anticipated completion date, Farber did not seek to extend fact discovery cutoff or continue the deadline to file motions. Instead, she waited until her opposition to the

City's Motion was due to seek this relief. Farber's conduct demonstrates a lack of diligence and does not support deferring resolution of the Motion.

Farber fails to meet her burden under Rule 56(d) to defer or deny the Motion and permit additional discovery. Accordingly, the request is denied.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 36.) In light of this disposition, Plaintiff's and Defendant's motions in limine are **DENIED** as moot. (ECF No. 85, 86, 87, 88, 89.) The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

May 24, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**